## CANAL LEASES TERMINATED BY ABANDONMENT OF THE CANAL.

Common Pleas Court of Hamilton County.

JOHN C. ROGERS, A TAXPAYER, V. CITY OF CINCINNATI, F. W. EDWARDS ET AL, THE BOARD OF RAPID TRANSIT COMMISSIONERS, GEORGE P. CARREL, AUDITOR, AND ALEXANDER PATTERSON, TREASURER, ALL OF SAID CITY.

Decided January 14, 1921.

*Canal Water Rights—Leases for Surplus Water were Mere Licenses—Abandonment of a Portion of Canal Terminated Water Rights—Leasees not Entitled to Compensation Because of Failure of Water Leases not Entitled to Compensation Because of Failure of Water Privilege.*

1. By the act of March 23d, 1863 (60 Ohio L., 44), and the lease to the city of Cincinnati, executed in accordance therewith, the state abandoned the Miami and Erie Canal, from the east side of Broadway to the Ohio river, for transportation purposes.

2. The right reserved in said act and lease to flow the water through a sewer or conduit, in said part of the canal so abandoned, from the remaining part of said canal above Broadway, was for the benefit of the said remaining part of the canal, and incidentally such flow of water below Broadway, through the sewer or conduit so provided, could be and was used by the state for the benefit of the lessee users of water located in that part of the canal so abandoned for transportation purposes, such as the defendant lessee users herein; but this right so reserved by the state was not a vested right reserved to said lessee users of water; and such rights could be taken away by the state at any time without liability. (*Hubbard* v. *Toledo*, 21 O. S., 379; *Elevator Co.* v. *Cincinnati*, 30 O. S., 629 and *Fox* v. *Cincinnati*, 33 O. S., 492 followed).

3. The acts of May 15, 1911 (102 Ohio Laws, 168), the amendments of April 18th 1913 (103 Ohio Laws 720) and August 15. 1915 (106 Ohio Laws, 293), and the amended lease of January 6, 1917, executed in accordance therewith, providing, as they do, for the abandonment of said canal from the east side of Broadway to a point three hundred (300) feet north of Mitchell avenue, for transportation purposes, by cutting off, or deflecting the water in the canal, into Millcreek, at or near Mitchell avenue, with no provision therein for the flow of water below Broadway, the state thereby exercised its reserved right to terminate the flow of water,

in sewer, conduit or otherwise, in that portion of the abandoned canal, below Broadway, and when the water was deflected from said canal, on October 22, 1919, into Millcreek. at or near Ludlow avenue, no liability was thereby created against the state or city of Cincinnati.

4. The provision, in said last named acts and amended lease, as to the construction of appropriate water works for the benefit of those lessee users of water, located between Broadway and 300 feet north of. Mitchell avenue, was expressly limited to them, and as to all such, it is conceded, that the leases or licenses had terminated, been revoked or abandoned, prior to October 22d, 1919, when the water of the canal was deflected into Millcreek, at or near Ludlow avenue, and there was no necessity for the construction of conduits for the benefit of such leases or licenses which no longer existed; and even if this were not true, the users of water below Broadway could not, under said last named acts and amended lease, claim any benefit therefrom, as they are not referred to in any manner therein, as such benefits were expressly reserved to those owning water rights above Broadway.

5. And hence, any and all attempts of the city of Cincinnati, through its board of rapid transit commissioners, or otherwise, to pay the defendants, who claim to own water power leases from the state, located below Broadway, for their so-called water powers, or damages therefor, by reason of cutting off the water of the canal, at or near Mitchell avenue, as authorized in said acts of 1912, 1913 and 1915, and amended lease of 1917, are illegal and void, and the expenditure of money therefor, by the said city, through the said board, or any of its officers, defendants herein, would be and is a misapplication of the funds of the city, and will be enjoined under Section 4311 of the Code, at the suit of a taxpayer, as alleged in the amended petition.

*John C. Rogers* and *Powel Crosley* for plaintiff.
*Fredk. S. Spiegel,* for Board of Rapid Transit Commissioners.
*Saul Zielonka* and *Wm. J. Kuertz,* for the City.
*Jos. W. Heintzman,* for Kilgour Estate.
*Waite, Schindel & Bayless,* for Carrie M. Fagin.
*Frost & Jacobs* for Atkins & Pearce Mfg. Co.

Frederick L. Hoffman, J.

The plaintiff, a taxpayer of the city of Cincinnati, filed a petition against the defendants, praying for an injunction against the said city and the board of rapid transit commissioners, to prevent them from paying out of the treasury the

sum of $60,483 in accordance with a certain resolution of the said rapid transit commissioners, to compensate the Atkins and Pearce Manufacturing Company, Carrie M. Fagin, and the Kilgour estate, for certain water rights which they had in the surplus water which flowed from the Miami and Erie canal east of Broadway. These rights were secured under a lease of the state of Ohio to one Clark Williams, said lease being executed on March 26, 1863, and being for ninety-nine years, renewable forever, in all surplus water not needed for transportation purposes of the Miami and Erie canal, which originally ran from north of Mitchell avenue to Broadway, and then passed the property of these defendants east of Broadway to the Ohio river.

The part of the canal east of Broadway, under an act of the legislature passed March 24, 1863, 60 Ohio Laws, 44, was leased by the state of Ohio to the city of Cincinnati. Said city was granted the privilege of occupying said canal east of Broadway forever, with the privilege of using it for highway and sewerage purposes, subject to all outstanding rights, if any, with which said grant might conflict, and upon the condition that the said city was not to obstruct the flow of water through said canal to the west and north thereof, nor destroy, nor injure the then present supply of said water for milling purposes, and that the city should be liable for any damages caused by any obstruction or injury by it.

Under the authority of this lease the city constructed Eggleston avenue on the canal property from the east side of Broadway, and the surplus water from the canal west of the east side of Broadway continued to flow through a culvert to the Ohio river until October 22, 1919, when the board of rapid transit commissioners of the city of Cincinnati, acting under a lease dated January 6, 1917, shut off and deflected the water of the canal into Mill creek, thereby preventing all lessees of water rights east of Broadway from obtaining any surplus water flowing from the canal.

The second lease, executed January 6, 1917, was made under and by virtue of acts passed by the Ohio Legislature May 15, 1911, 102 Ohio Laws, 168; 103 Ohio Laws, 720; and the amend-

ment thereto, passed August 17, 1915, 106 Ohio Laws, 293. Under the latter lease the city of Cincinnati was given the right to enter upon, improve and occupy forever as a public street or boulevard and for sewerage, conduit or subway purposes, all that part of the canal from 300 feet north of Mitchell avenue to the east side of Broadway, on condition that said use and occupancy should be subject to all outstanding rights or claims, if any existed, or with which said lease might conflict, and the city was obligated to construct an outlet from the canal to Mill creek, so as not to obstruct the flow of water north of Mitchell avenue, nor to destroy or injure the then present supply of water for mechanical or commercial purposes, and if necessary, to construct such appropriate works for the supplying of water to lessee users of water along that portion of the canal to be abandoned, so as to enable the state to carry out its obligations to such lessees of water on the part of said canal to be abandoned.

To this petition the defendants filed a demurrer on the ground that the facts alleged did not state a good cause of action.

Plaintiff claims that by the acts of 1911, 1913, and 1915 of the Legislature, authorizing the state to lease the part of the canal west of the east side of Broadway to 300 feet north of Mitchell avenue, and the lease executed thereunder, there was not only an abandonment of the canal between said points, but that whatever rights the Atkins & Pearce Manufacturing Company, Carrie M. Fagin or the Kilgour estate had in the surplus water rights were cut off without subjecting the state or city to liability, and therefore the board of rapid transit commissioners had no legal right to pay or compromise the claim of said parties.

The defendants, on the other hand, claim that said lease did not take away any legal rights secured to them under the Clark Williams lease; and further, that under the lease made January 6, 1917, the city was required to furnish them the surplus water from the canal for milling, mechanical and commercial purposes.

"The state evidently contemplated a permanent use of the

canals, if public policy required their maintenance, but the right of the state to abandon them, or to resume the grant, was not abridged or surrendered by the lease, though it was in perpetuity.'' *Fox* v. *Cincinnati,* 33 O. S., 482 at 501.

The rights of said water users east of Broadway were not vested rights as against the state of Ohio, although such rights might be considered vested as against strangers, as held in 9 Ohio Dec. Reprint, 744. Said water users were mere licensees, and the license given to them under the Clark Williams lease was such as the state had the right at any time to terminate by the abandonment of the canal, or any portion thereof.

In the case of *Hubbard* v. *City of Toledo,* 21 Ohio St., 379, the court, in passing upon the rights of lessee water users, say on page 399:

''We think the plaintiff's lease did not vest in them any such claim or right. They had a mere license which the abandonment extinguished.''

In the same case it was held that,

''To authorize the city of Toledo to enter and occupy a part of the Miami and Erie canal as a public highway and for sewerage and water purposes was an abandonment by the state of that part of her public canals so entered upon and occupied.''

The act of 1863, and the lease to the city of Cincinnati executed thereunder, was an abandonment of the part of the canal east of Broadway, and the acts of 1911, 1913, and 1915 and the lease of 1917 executed thereunder, was an abandonment of the part of the canal west of the east side of Broadway to a point 300 feet north of Mitchell avenue. The right unquestionably rested in the state at any time to abandon the canal or any portion thereof without subjecting itself to liability to parties having surplus water rights.

''The abandonment of her canals by the state, creates no liability on her part, to respond in damages resulting therefrom to parties holding leases of 'surplus water,' under the act of March 23, 1840, 'to provide for the protection of the canals of the state of Ohio, the regulation of the navigation of tolls.' '' *Hubbard* v. *Toledo,* 21 Ohio St., 379, Syl. 4; *Elevator Co.* v. *Cincinnati,* 30 Ohio St., 629.

No legal claim for the acts of the state in the abandonment of the canal west of Broadway could be asserted against the state. The defendants, however, claim that the condition under which said lease was made and has continued, placed a burden upon the city to protect them either by furnishing to them surplus water, or by paying them for the extinguishment of their rights.

The conditions under which the state of Ohio could grant a lease of the canal are contained in the acts, 102 Ohio Laws, page 168; 103 Ohio Laws, 670; and 106 Ohio Laws, 293; and the lease executed January 6, 1917. The conditions as set forth in said acts and said lease, under which the city of Cincinnati acquired the right to use and occupy the canal from west of the east side of Broadway to 300 feet north of Mitchell avenue are in substance as follows:

1. Said grant shall be made subject to all outstanding rights and claims, if any, with which it may confliflct.

2. Said city shall, in the uses of said canal (for street, boulevard, sewerage, conduit or subway purposes), of all or any portion herein mentioned of such canal, shall construct or cause to be constructed an outlet for the water of said canal at a point 300 feet north of Mitchell avenue, or at the present spillway, so as not to obstruct the flow of water through the remaining part of said canal, nor injure the present supply of water for mechanical or commercial purposes.

3. Said city shall adopt and construct appropriate works for the purpose of supplying water to the lessee users of said water along that portion of the canal to be abandoned, in order to enable the state to carry out its contract with said lessee water users.

4. The city shall not cause any cessation or diminuation of the supply of water to the said lessee (those along that portion of the canal to be abandoned) water users, to which they are entitled under their respective contracts or leases with the state of Ohio.

As between the acts of the Legislature and the lease itself, the acts control. The rights of the parties must be determined from the acts of the Legislature authorizing the lease, and no

rights can accrue under the terms of the lease which are not authorized by these acts. *Cincinnati* v. *Distilling Co.*, — C. C. A. —; *Rosenberg* v. *Hollister,* 4 Ohio St., 297; *State* v. *Railway,* 37 Ohio St., 157.

In the instant case, the conditions under which the state could make the lease, and the conditions in the lease, were substantially the same and as set forth above. Was the city of Cincinnati under any obligation in these conditions to the lessee water users east of Broadway? Did the lease of the canal west of the east side of Broadway to 300 feet north of Mitchell avenue conflict with any outstanding rights or claims of lessee water users east of Broadway? It is true that after the shutting off and deflection of the water of the canal near Mitchell avenue on October 22, 1919, and the abandonment of the canal from the east side of Broadway to 300 feet north of Mitchell avenue, no surplus water continued to flow to the Ohio River. That fact, however, did not necessarily give rise to a claim against the city or its board of rapid transit commissioners. The act of the city in shutting off said water and taking possession of the canal, must conflict with outstanding rights or claims legally enforcible against the state of Ohio, or its lessee, the city of Cincinnati. In the Hubbard case, *supra,* Syllabus 5, and on page 395 of the opinion, it is held that a liability for such resulting damages only as would constitute a legal demand against the state, would create an obligation against the city. By the same case it is held, that surplus water lessees do not possess the legal rights with which an abandonment of the canal conflicts. The lessees of the "surplus water" occupying property west of the east side of Broadway had all expired before the water was shut off (and although the leases of the defendants east of Broadway to surplus water had not expired, the said leases to them gave them a mere license to the surplus water without imposing any obligations on the state to furnish surplus water, nor did said lease contain any of the other covenants necessary to make said lease a grant of vested interests. The state had the right at any time to terminate the license to said defendants, or after stopping the use of the canal for navigation purposes, to resume its use as a canal at any time, without incurring liability to a lessee of surplus water.

On page 398 of the Hubbard case, the court said:

"The lease for surplus water was adventitious, incidental, and therefore, necessarily precarious; and those obtaining grants thereof must be supposed to have taken them, subject to the fluctuations of tides, and the changes of time."

In *Elevator Co.* v. *Cincinnati,* 30 Ohio St., 629, Syllabus 3, the court holds:

"The right to surplus water and to lease the same for private uses, is an incident of the public use of the canal for purposes of navigation. The canals of the state were authorized, constructed, and maintained for public purposes, and not to afford water power, to be leased or sold, for private use. The latter use is subordinate, and the right to the same may be terminated whenever the state, in the exercise of its discretion, abandons or relinquished the public use."

The second condition required the city to construct an outlet for the water at the point at which it was shut off. This had been done, so as not to interfere with the flow of the water in the remaining part of the canal. "The remaining part of the canal," can not be construed to mean the part of the canal abandoned under the act of 1863, but must be construed as meaning the remaining part of the canal not heretofore abandoned, or to be abandoned under the acts of 1911, 1913, 1915 and the present lease. Surely, after a portion of the canal has been abandoned for years, the portion so abandoned is no longer a canal. It could not have been the intention of the Legislature to impose upon a city a duty to build an expensive conduit so that private users of surplus water along a portion of the canal abandoned for many years, would alone be benefited.

If the court is right in its conclusion, that the act of 1863 and the lease thereunder was an abandonment of the canal east of Broadway to the Ohio river, and the acts of 1911, 1913, and the lease thereunder, was an abandonment of the canal west of the east side of Broadway to 300 feet north of Mitchell avenue, the remaining part of the canal would be that part of the canal beyond and north of 300 feet north of Mitchell avenue, the flow of water of which has not been obstructed. The present supply of water for mechanical and commercial pur-

poses of that remaining part of the canal has not been interferred with in any way to the detriment of those who had leases of surplus water under the lease of the canal from west of the east side of Broadway, and it would be strained construction to hold that the city would be bound to keep up a supply of surplus water for the benefit only of those who had leases of surplus water on a part of the canal not covered by the lease itself, unless the lease expressly declared that it was the duty of the city to do so. The acts of 1911, 1913, 1915, and the lease of January 6, 1917, make no express provision for the protection of the surplus water users east of Broadway. No mention in any way is made of them in either the acts or the lease. We can not come to the conclusion that the Legislature intended to cover matters which were not expressly stated in the acts. *Singluff* v. *Weaver*, 66 Ohio St., 621. In one of the subsequent clauses of the act of 1911, it was specifically stated that it was the duty of the city not to interfere with the flow of water along "the portion of the canal herein described," and in another clause of said act, "the part of said canal abandoned" was used.

It is a rule of construction that where the sense of a term in any clause of a statute is certain and definite, its sense in another clause will be presumed to have been intended to be the same, unless enlarged or restricted by the context, or necessarily varied to effectuate an obvious intention of the statute. See *Hubbard* v. *City of Toledo*, 21 Ohio St., 400. Since the obligation of the city is expressly restricted in one part of the act and lease, to the part of the canal to be abandoned, and in another part, to the portion herein described (from east of Broadway to 300 feet north of Mitchell avenue), we see no reason to enlarge the obligation of the city in other clauses to cover parts of the canal not expressly included either in the acts of the Legislature or of the lease.

In construing the original lease of 1863, in *Fox* v. *Cincinnati*, *supra*, page 502, the court says:

"The lease expressly provides for damages for a non-supply of water, when it is necessary for navigation, but makes none for damages for non-supply in other cases.

"The exercise of the reserved right of the state to abandon

the canal, and thus cut off permanently the supply of surplus water, created no obligation on the part of the state to respond for damages to a lessee, and if none existed against the state, none was imposed on the city by accepting the grant. The right or claim that did not subsist against the state did not accrue against the city.''

The acts of 1911, 1913 and 1915, expressly state that the city should construct appropriate works for the purpose of supplying water to lessee water users ''along that portion of the canal to be abandoned.'' This does not obligate the city to provide water to any lessees except those who might exist along the portion of the canal from the east side of Broadway to 300 feet north of Mitchell avenue, which was the only part abandoned by said acts and lease.

The fourth condition required the city not · to cause any cessation or diminution of the supply of water to said lessees, to which they are entitled under their respective contracts or leases with the state of Ohio. The act uses the expression, ''said water users,'' which must be referable to the water users mentioned in said act. The fact that in a previous clause of the same paragraph it specifically mentions the water users of that part of the canal to be abandoned, namely, ''that portion of the canal from the east side of Broadway to 300 feet north of Mitchell avenue,'' strengthens the conclusion that it was the intention of the Legislature not to obligate the city in any way to the lessee water users east of Broadway.

The court is therefore of the opinion that neither the city nor the board of rapid transit commissioners were under any legal obligation either by the acts of 1911, 1913 and 1915, or under the lease of January 6, 1917, to protect or pay any sum whatsoever to the lessees of surplus water east of Broadway.

The demurrer to the plaintiff's amended petition is therefore overruled.

April 2d, 1921—

The defendants having filed an answer to the amended petition, and the plaintiffs a reply thereto, with a motion for judg-

Koeberle v. Akron.

ment on the pleadings, Judge Hoffman announced, that the issues had not been changed and that he adhered to the above opinion on the demurrer of the defendants to the amended petition of plaintiffs, and granted the motion of plaintiff for judgment on the pleadings.